UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| SERGIO MUNOZ, JR., § § Plaintiff, § § v. § NO. EP-20-CV-00285-LS § COMMISSIONER OF SOCIAL § SECURITY, § § Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff appeals the denial of his application for disability insurance benefits. The parties consent to my determination of the case under 28 U.S.C. § 636(c) and Appendix C of the Local Court Rules for the Western District of Texas. I **AFFIRM** the Commissioner's decision denying Munoz's application.

### I.   Facts and Proceedings

Munoz alleges he became disabled on December 1, 2015 because of liver cirrhosis, spinal arthritis, depression, and leg, hand, and stomach pain.[1] An Administrative Law Judge ("ALJ") held a hearing on February 7, 2020 and heard testimony from Munoz, who was represented by counsel, and a vocational expert ("VE").[2] In an opinion dated April 1, 2020, the ALJ determined that Munoz was not disabled within the meaning of the Social Security Act.[3] The Appeals Council denied his request for review on September 15, 2020, making the decision of the ALJ the final

---

[1] R:65, 205.
[2] R:28-47.
[3] R:10-21.

decision of the Commissioner.[4] Munoz argues in this appeal that the ALJ erroneously evaluated a treating physician's opinion and insufficiently examined his ability to sit, stand, and walk at work.

## II.    Discussion

### A.    Legal Standards

Judicial review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole; and (2) whether the Commissioner applied the proper legal standard.[5] Substantial evidence "is more than a mere scintilla and less than a preponderance."[6] The Commissioner's findings will be upheld if supported by substantial evidence.[7] In evaluating a disability claim, the Commissioner must follow a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe medically determinable physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant can perform other relevant work.[8]

Courts utilize four elements of proof to determine whether there is substantial evidence of disability: (1) objective medical evidence; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[9] A court cannot, however, reweigh the evidence, try the issues

---

[4] R:1-3.
[5] *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)).
[6] *Hill v. Berryhill*, 718 F. App'x 250, 253-54 (5th Cir. 2018) (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th 2002)).
[7] *Masterson*, 309 F.3d at 272.
[8] 20 C.F.R. § 404.1520; *Boyd v. Apfel*, 239 F.3d 698, 704-05 (5th Cir. 2001).
[9] *Perez*, 415 F.3d at 462.

*de novo*, or substitute its judgment for the Commissioner's.[10] The Commissioner, not the courts, must resolve conflicts in the evidence.[11]

### B.     Residual Functional Capacity

Residual functional capacity, or RFC, is the most an individual can still do despite his or her limitations.[12] The responsibility to determine a claimant's RFC belongs to the ALJ.[13] The ALJ must consider a claimant's abilities despite his or her physical and mental limitations based on the relevant evidence in the record.[14] The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms.[15] An RFC finding is used to determine if the claimant can still do his or her past jobs.[16] If the claimant cannot, the RFC is then used to determine whether the claimant can do other jobs in the national economy.[17]

### C.     The ALJ's Findings

In this case, the ALJ found that Munoz's severe impairments were "chronic liver disease, obesity, and depressive/bipolar disorder."[18] They were not, however, individually or in combination severe enough to meet or equal an impairment listed in the appendix to the regulations.[19] The ALJ found that Munoz could still perform "light work," with certain limitations,[20] including

---

[10] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).
[11] *Id*.
[12] 20 C.F.R. § 404.1545(a)(1).
[13] *Id*. at § 404.1546(c); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).
[14] *Perez*, 415 F.3d at 461-62.
[15] *See* 20 C.F.R. §§ 404.1529(d)(4), 404.1545(a)(2).
[16] *Perez*, 415 F.3d at 462; 20 C.F.R. § 404.1520(e).
[17] *Id*.
[18] R:12-13.
[19] R:13-15.
[20] R:15-19. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

janitorial work and working as a routing clerk and price marker.[21] Accordingly, the ALJ found Munoz not disabled and not entitled to disability insurance benefits.[22]

### D. Dr. Argelia Woo-Telles' Opinion

On March 10, 2019, Dr. Argelia Woo-Telles reported on a pre-printed disability form that Munoz could not stand or walk at all during an eight-hour work day, and would be able to sit for only one hour at time.[23] She also indicated that Munoz can never lift ten or more pounds, and would only "occasionally" be able to lift less than ten pounds.[24] Finally, she indicated that Munoz would need to lie down during the workday for periods longer than regular breaks; had hand, finger, and arm limitations; and would miss work more than four times per month, all because of liver cirrhosis.[25] Munoz argues in this appeal that the ALJ's RFC determination is flawed because "he failed to properly evaluate the opinion[s]" on this form.[26]

The ALJ was required to,[27] and did, evaluate the extent to which Dr. Woo-Telles' own medical records supported[28] her opinion and whether the opinion is consistent[29] with other medical source evidence. The ALJ's opinion explains that Dr. Woo-Telles' own records did not support the "extreme physical limitations" on the disability form she filled out. For example, when Munoz

---

[21] R:20-21.
[22] R:21.
[23] R:530.
[24] *Id*.
[25] *Id*. at 530-31.
[26] ECF No. 18, at 9.
[27] "The factors of supportability…and consistency…are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions…to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions…in your determination or decision." 20 C.F.R. § 404.1520c(b)(2).
[28] "Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).
[29] "Consistency. The more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and non medical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be."

saw Dr. Woo-Telles on January 17, 2019, two months before Dr. Woo-Telles filled out the March 2019 disability form, Munoz did not complain about any physical limitations and Dr. Woo-Telles did not record any.[30] Just a few months earlier, on September 10, 2018, Dr. Woo-Telles recorded generally normal physical findings, noting that Munoz's back, musculoskeletal system, and neck had "full range of motion."[31]

The ALJ also explained that Dr. Woo-Telles' opinion was inconsistent with other doctors' findings. Indeed, two weeks before Dr. Woo-Telles filled out the March 2019 disability form, Dr. Ruben Ramirez examined Munoz and recorded a completely normal physical exam: "Neurologic: no weakness, numbness, seizures, headaches, strokes, dizziness, or memory loss and good coordination…Musculoskeletal: no muscle aches or weakness and no arthritis or arthralgias/joint pain."[32] Dr. Ramirez also recorded that Munoz's upper and lower extremities had normal strength and Munoz walked with a normal gait.[33] Tenth months later, on December 4, 2019, Dr. Ramirez examined Munoz and recorded the exact same normal physical findings.[34]

Similarly, on December 21, 2018, Dr. Emilio Gonzalez-Ayala noted that Munoz was "able to lift, carry[,] and handle objects without major problems;" "no pain [was] induced during [the] physical exam;" he had "no loss of motion by any degree;" all of his joints had "preserved active and passive ranges of motion;" he had normal "strength, coordination, and dexterity" in his hands and fingers; he had "[n]o major muscle atrophy to any of the muscle groups;" his gait was unremarkable; he could walk on his heels and toes, could squat, hop, and walk in tandem; he had normal grip strength; and he did not require a cane or crutch to ambulate effectively.[35]

---

[30] R:451-52.
[31] R:455.
[32] R:658.
[33] R:659.
[34] R:664-65.
[35] R:414-15.

The ALJ referenced and took into consideration all relevant medical records to evaluate Dr. Woo-Telles' March 2019 opinion. My review of the record reflects that substantial evidence supports the ALJ's decision and he applied the proper legal standards.

**E. Function by Function Analysis**

Munoz argues that the ALJ's RFC analysis was flawed because he "failed to provide an assessment of Plaintiff's limitations in his ability to sit, stand, and walk within an eight-hour day."[36] The RFC assessment "is a function-by-function assessment based upon all of the relevant evidence of an individual's *ability to do work related activities.*"[37] The ALJ's determination in this case satisfies this standard because he based his decision in part on the medical reports of Drs. Hegde and Rowley,[38] "which contain a general evaluation of [Munoz's] mobility and a function-by-function analysis of the impact of [his] impairments on [his] ability to perform various tasks."[39] Finally, I find no error in the ALJ's consideration of Munoz's fatigue because he specifically referenced "[t]reatment records throughout 2019 document[ing] the claimant's complaints of chronic fatigue"[40] and incorporated them into the finding that Munoz's can still perform a "light work."[41]

**Conclusion**

The ALJ properly considered all the medical evidence in this case, substantial evidence supports his decision, and there is no legal error.

**AFFIRMED**.

---

[36] ECF No. 18, at 18.
[37] *Jeansonne v. Paul*, 855 F. App'x 193, 198 (5th Cir. 2021) (emphasis in original).
[38] R:18, citing R:56-57 (Dr. Hegde) and R:74-75 (Dr. Rowley).
[39] *Beck v. Barnhart*, 205 F. App'x 207, 213-14 (5th Cir. 2006).
[40] R:16.
[41] R:18.

**SIGNED** and **ENTERED** August 15, 2022.

_____
**LEON SCHYDLOWER**
**UNITED STATES MAGISTRATE JUDGE**